## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION



NOV - 5 2010

**LORILLARD TOBACCO COMPANY**

and

**LORILLARD LICENSING COMPANY, L.L.C.**

      Plaintiffs,

v.

**CALIFORNIA IMPORTS, LLC,**

      Serve: Fazal Mithal,
      9975-A Lickinghole Road
      Ashland, Virginia  23005

**SUNRISE WHOLESALE LLC,**

      Serve: Sunrise Wholesale LLC
      5913 School Avenue
      Richmond, Virginia  23228-5447

**GLOBAL MARKET DIRECT LTD.,**

      7360 Bell Creek Road
      Mechanicsville, Virginia  23111

**MIKE JAMES, in his individual capacity and as
owner of Global Market Direct Ltd.,**

      Serve: Mike James
      7360 Bell Creek Road
      Mechanicsville, Virginia  23111

**MOHAMMAD "MOE" ABUJAMOUS,**

      12512 Sandbag Road
      Midlothian, Virginia 23113-2823

**M.H.M.A. Corporation,**

Civil Action No. 3:10-cv-817

**JURY TRIAL DEMANDED**

Serve: Mhdy H. Alnkrsh
Registered Agent
699 North Laburnum Avenue, Unit 3
Henrico, Virginia 23223

and JOHN DOES 1-10,

   Defendants.

## COMPLAINT

Plaintiffs Lorillard Tobacco Company and Lorillard Licensing Company, L.L.C. (collectively "Lorillard") allege as follows for their complaint against Defendants California Imports, LLC, Sunrise Wholesale LLC, Global Market Direct Ltd., Mike James, Mohammad "Moe" Abujamous, M.H.M.A. Corporation, and John Does 1-10:

1.      This is an action for trademark infringement, trademark counterfeiting, trademark dilution, trade dress infringement, trade dress dilution and unfair competition, under federal law and common law of the Commonwealth of Virginia, which Lorillard brings to protect some of its most valuable assets, namely, the goodwill and consumer recognition it has developed in federally-protected marks and trade dress associated with its NEWPORT brand cigarettes. For many years, Lorillard has continuously used and extensively promoted its famous NEWPORT Marks and NEWPORT Trade Dress (as defined below) in connection with the advertising, promotion and sale of cigarettes. As described more fully below, without Lorillard's authorization or consent, and with clear knowledge of Lorillard's prior rights in its federally-protected NEWPORT Marks and the NEWPORT Trade Dress, Defendants recently began to use the virtually identical and confusingly similar designation NEWPROT, and a counterfeit of the NEWPORT Trade Dress, in connection with the advertising, promotion and sale of "aromatic potpourri herbal blends," actually a synthetic marijuana substitute. Defendants' conduct is likely

2

to mislead the public and members of the relevant trade into believing that Defendants and their products are authorized by, sponsored by, or affiliated with Lorillard, their well-known marks and the goods provided thereunder. Lorillard accordingly brings this action in order to protect its valuable federally-protected marks and to halt the damages and irreparable harm it has suffered and will continue to suffer as a result of Defendants' actions.

### The Parties

2.     Plaintiff Lorillard Licensing Company, L.L.C., is a North Carolina limited liability company with a place of business at 1601 Wachovia Tower, 300 North Greene Street, Greensboro, North Carolina. Lorillard Licensing Company is the owner of all relevant trademark rights associated with NEWPORT brand cigarettes.

3.     Plaintiff Lorillard Tobacco Company is a Delaware corporation with a place of business at 714 Green Valley Road, Greensboro, North Carolina. A trademark licensee of Lorillard Licensing Company, Lorillard Tobacco Company manufactures and sells NEWPORT brand cigarettes.

4.     Defendant California Imports, LLC is nominally a limited liability company that, upon information and belief, has a mailing address and place of business at 9975 Lickinghole Road, Suite A, Ashland, Virginia 23005. Upon information and belief, California Imports has not registered with any official or agency of the Commonwealth of Virginia to transact business in the Commonwealth and has not registered an address or an agent in Virginia for the service of process, as required by law.

5.     Defendant Sunrise Wholesale LLC ("Sunrise") is nominally a limited liability company that, upon information and belief, has a mailing address and place of business at 5913 School Avenue, Richmond, Virginia 23228-5447. Upon information and belief, Sunrise has not

3

registered with any official or agency of the Commonwealth of Virginia to transact business in the Commonwealth and has not registered an address or an agent in Virginia for the service of process, as required by law.

6.     Defendant Global Market Direct Ltd. is a Virginia business that, upon information and belief, has a place of business and mailing address at 7360 Bell Creek Road, Mechanicsville, Virginia 23111. Global Market Direct Ltd. is owned by Defendant Mike James, and operates as a wholesale distributor of "spice" herbal incense products. Upon information and belief, Global Market Direct Ltd. has not registered with any official or agency of the Commonwealth of Virginia to transact business in the Commonwealth and has not registered an address or an agent in Virginia for the service of process, as required by law.

7.     Defendant Mike Jones is a natural individual residing, upon information and belief in Virginia. Jones is the owner of Defendant Global Market Direct Ltd.

8.     Defendant Mohammad "Moe" Abujamous is a natural individual with a residence at 12512 Sandbag Road, Midlothian, Virginia 23113-2823. Abujamous is the registrant of the second-level domain <spice99wholesale.com> and, upon information and belief, is the operator of the website located at that domain. Upon information and belief, Abujamous is also an employee or agent of Defendant Global Market Direct Ltd.

9.     Defendant M.H.M.A. Corporation is a Virginia corporation, with the Virginia corporate identification number 0704948-9, and operates Jordan Food Mart located at 3919 Hull Street Road, Richmond, Virginia 23224. M.H.M.A. Corp's registered agent is Mhdy H. Alnkrsh, of 699 North Laburnum Avenue, Unit 3, Henrico, Virginia 23223.

10.     Defendants Does 1 through 10 are other parties not yet identified who, upon information and belief, together with California Imports, Sunrise Wholesale, Global Market

4

Direct, Jones, Abujamous, and M.H.M.A. Corp. have engaged in one or more of the wrongful practices alleged below. The true names, whether corporate, individual or otherwise, of Does 1 through 10, inclusive, are presently unknown to Lorillard, which therefore sues those Defendants by fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when the same have been ascertained.

## Jurisdiction and Venue

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338, as well as 15 U.S.C. § 1121. The Court has supplemental jurisdiction over Lorillard's state law claims under 28 U.S.C. § 1367.

12.     Upon information and belief, each Defendant is subject to general and specific personal jurisdiction in the Commonwealth of Virginia.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

## Facts

### Lorillard's Proprietary Trademarks, Service Marks and Trade Dress

14.     The nation's third largest tobacco company, Lorillard manufactures and sells top quality branded cigarettes. Lorillard was founded in 1760 and is the oldest continuously operating company in the United States.

15.     Lorillard's leading brand is NEWPORT, which was first introduced to the market in 1956. Since then, Lorillard has invested substantial time, effort and money in advertising and promoting cigarettes under the NEWPORT brand throughout the United States. Lorillard has established and maintained a reputation among smokers for quality and consistency in its products. As a result of Lorillard's excellent reputation and its investment in its brands,

NEWPORT cigarettes have become the leading brand of menthol cigarettes sold in the United States, and the second leading cigarette brand overall, with 10.88% of the national market.

16.     To protect its rights in the NEWPORT brand, Lorillard has obtained a federal registration on the Principal Register of the United States Patent and Trademark Office for the trademark NEWPORT (Reg. No. 1,108,876) in connection with cigarettes. This NEWPORT registration issued on December 12, 1978, and became incontestable in 1983 under section 15 of the Lanham Act, 15 U.S.C. §1065. This registration remains in full force and effect and is conclusive evidence of the validity of the NEWPORT mark, of Lorillard's registration and ownership of the NEWPORT Mark, and of Lorillard's exclusive right to use the NEWPORT Mark. A copy of the certificate of registration for this mark is attached as Exhibit 1.

17.     Lorillard also has obtained a federal registration on the Principal Register for the trademark NEWPORT & Design (Reg. No. 1,191,816) in connection with cigarettes. The NEWPORT & Design registration issued on March 9, 1982, and became incontestable in 1987 under section 15 of the Lanham Act, 15 U.S.C. §1065. This registration also remains in full force and effect and is conclusive evidence of the validity of the NEWPORT & Design mark, of Lorillard's registration and ownership of the NEWPORT & Design mark, and of Lorillard's exclusive right to use the NEWPORT & Design mark. The NEWPORT & Design mark is displayed below, alongside a depiction of the NEWPORT & Design mark, as it appears on packaging for Lorillard's NEWPORT brand cigarettes. A copy of the certificate of registration for this mark is attached as Exhibit 2.

 

18.     Together, the marks identified in paragraph 15 through 17 are referred to as the "NEWPORT Marks."

19.     In an effort to distinguish NEWPORT brand cigarettes from other products, Lorillard devoted a substantial amount of time, effort and resources into the design of unique and distinctive packaging graphics for its NEWPORT brand cigarettes.

20.     Since 1969, NEWPORT cigarettes have been sold under an inherently distinctive trade dress characterizing the front of the packaging of Lorillard's NEWPORT brand cigarettes, which consists of, among other unique and distinctive elements:

     a.     a rectangle design with white at the top portion of the rectangle;

     b.     the stylized green word "Newport" written in the white portion of the rectangle;

     c.     a gold horizontal stripe immediately adjacent to the white portion of the rectangle;

     d.     the portion of the rectangle below the gold horizontal stripe in green with a black horizontal stripe pattern; and

     e.     a white spinnaker in the lower right corner of the rectangle

(the "NEWPORT Trade Dress").  Two recent versions of the NEWPORT Trade Dress, as they have been used in commerce, are depicted below.

7





21.     The elements of the NEWPORT Trade Dress are critical to the marketing success of Lorillard's NEWPORT brand cigarettes; not only do they serve to identify Lorillard as the source of origin of the product and to distinguish the product from others, but they also represent and convey the product's premium quality and value to consumers.

22.     The NEWPORT Trade Dress is not functional and constitutes a famous trade dress separate and apart from the NEWPORT Marks within the meaning of 15 U.S.C. § 1125(c).

23.     To protect its rights in the NEWPORT Trade Dress, Lorillard has obtained multiple federal registrations protecting one or more elements of that trade dress.  Those registrations, and the particular design elements protected thereby these registrations, are shown in the following.

| Registration No. | Registration Date | Description | Image |
|---|---|---|---|
| 3,579,236 | 2/4/2009 | Box with white top, striations & spinnaker | |

| | | | |
|---|---|---|---|
| 3,836,509 | 8/24/2010 | Box with white top & striations | |
| 3,579,270 | 2/24/2009 | Color is not claimed as a feature of the mark. The mark consists of a rectangle design, the word "Newport" written in the top portion of the rectangle, a horizontal stripe pattern covering a portion of the rectangle, a spinnaker in the lower right corner of the rectangle, and the words "Menthol Box" below the spinnaker | |

| | | | |
|---|---|---|---|
| 3,601,464 | 4/7/2009 | The colors green, gold, white and black are claimed as a feature of the mark. The mark consists of a rectangle design with white at the top portion of the rectangle, the stylized green word "Newport" written in the white portion, a gold horizontal stripe immediately adjacent to the white portion, the portion below the gold horizontal stripe is green with a black horizontal strip pattern, a white spinnaker in the lower right corner of the rectangle and the white stylized words 'menthol box' under and to the left of the spinnaker | |
| 3,759,763 | 3/16/2010 | The colors green, gold, black and white are claimed as a feature of the mark. The mark consists of a rectangle design, with white covering the top portion of the rectangle, a gold horizontal stripe and the bottom portion of the rectangle is green with a black horizontal stripe pattern | |

| | | | |
|---|---|---|---|
| 3,618,542 | 5/12/2009 | The colors green, gold, black and white are claimed as a feature of the mark. The mark consists of a rectangle design, with white covering the top portion of the rectangle, a gold horizontal stripe, the lower portion of the rectangle being green with a black horizontal stripe pattern and a white spinnaker in the lower right corner of the rectangle. | |
| 2,600,870 | 7/30/2002 | Word in stylized form | |
| 1,178,413 | 11/17/1981 | Black & white spinnaker | |

Copies of the certificates of registration for these marks are attached as Exhibits 3 through 10.

24.     Registration Nos. 2,600,870 and 1,178,413 remain in full force and effect and are conclusive evidence of the validity of the NEWPORT (Stylized) mark and the Spinnaker mark, respectively, of Lorillard's registration and ownership of those marks, and of Lorillard's exclusive right to use those marks.

25.     United States Reg. Nos. 3,579,236, 3,836,509, 3,579,270, 3,601,464, 3,759,763 and 3,618,542 remain in full force and effect and are *prima facie* evidence of the validity of the

11

NEWPORT Trade Dress elements they protect, and of Lorillard's registration, ownership and exclusive right to use the NEWPORT Trade Dress.

26.     Lorillard has the exclusive right to use the NEWPORT Marks and the NEWPORT Trade Dress (collectively, "Lorillard's Marks") in connection with any importation, sale, offer to sell, or distribution of cigarettes and related goods or services in the United States

27.     Lorillard's Marks are inherently distinctive.  Alternatively, as a result of Lorillard's longstanding use and promotion, Lorillard's Marks have acquired secondary meaning, becoming widely recognized by the general consuming public and the trade as a designation of source identifying Lorillard and its NEWPORT brand of cigarettes.

28.     As a result of Lorillard's continuous and extensive use, sales, advertising and promotions, Lorillard's Marks have become extremely valuable and tremendously important assets belonging exclusively to Lorillard, symbolizing Lorillard's highly successful products and the goodwill appurtenant thereto.  Lorillard's Marks are well known, highly distinctive and famous, and became famous long before Defendants commenced the actions complained of in this Complaint.

<u>Defendants' Unlawful Acts</u>

29.     Upon information and belief, before they commenced the actions complained of below, Defendants were well aware of the existence and fame of Lorillard's Marks, of the vast goodwill represented and symbolized in Lorillard's Marks and of the public recognition and reliance upon Lorillard's Marks as to identify authentic products of Lorillard and distinguish Lorillard's goods and services from those of others.

30.     Defendants California Importers, Sunrise Wholesale, Global Market Direct, Jones, Abujamous, and M.H.M.A. Corp. market and sell, among other things, "herbal incense

products." Herbal incense products, such as those marketed by Defendants, are commonly known as "spice" or "K2" and are usually comprised of a mix of dried herbs, flowers, tobacco leaves and other substances, which are sprayed with a chemical substance such as JWH-018, HU-210, and CP 47,497. *See* Megan Hoyer, *Negative Buzz Builds over Synthetic Drug Blend*, Virginian-Pilot, Oct. 18, 2010, available at http://hamptonroads.com/2010/10/negative-buzz-builds-over-synthetic-drug-blend. These spray-on substances are synthetic chemicals that are structurally similar to THC, the active ingredient in marijuana. *See* Malcolm Gay, *Synthetic Marijuana Spurs State Bans*, N.Y. Times, July 10, 2010 (hereinafter "*Synthetic Marijuana Spurs State Bans*"). As such, the synthetic chemicals used in "spice" products produce effects that are similar to the effects produced by smoking marijuana, though the synthetic chemicals are substantially more potent than naturally occurring THC. *See* Andrew Jack, *The Story of Spice*, Fin. Times, Feb. 13, 2009 available at http://www.ft.com/cms/s/2/1721e2da-f8a0-11dd-aae8-000077b07658.html.

31.     Though many "spice" products are labeled as "herbal incense" "not for human consumption," that labeling is purely for show. This product is no mere "potpourri"; most, if not all, purchasers of "spice" purchase such products with the intent of smoking the incense in an effort to get high. *See Synthetic Marijuana Spurs State Bans*. Furthermore, there would be no advantage to mimicking a famous cigarette brand but for the purpose of advertising that NEWPROT is a smoking product. That implication is an acknowledgment that further contradicts the "not for human consumption" label.

32.     Even though the synthetic chemicals in herbal incense products are cannabinoids, many news stories regarding "spice" usage report that users of the drug often experience reactions not typically associated with naturally occurring cannabinoids such as THC. *See* Mary

13

Carmichael, *Fake-Pot Panic*, Newsweek, Mar. 4, 2010 available at

http://www.newsweek.com/2010/03/03/fake-pot-panic.html (hereinafter "*Fake Pot Panic*").

These reactions include agitation, anxiety and delirium and are likely caused by impurities in the

"spice" mix or poor synthesizing of the synthetic cannabis chemical. *Id.*; *see also* Joseph

Brownstein, *K2 Giving People Another Dangerous Way to Get High*, ABC News (March 17,

2010), http://abcnews.go.com/Health/Drugs/marijuana-substitute-spice-hitting-streets-putting-

kids-hospital/story?id=10118951. According to one poison expert purchasers of "spice"

products "don't know what you're getting. It's buyer beware." *Fake-Pot Panic*.

33. Recently, herbal incense products have garnered national media attention as the

result of their emergence as a new drug of choice for some teenagers. As a result, "spice" has

now been banned in at least nine states, Alabama, Georgia, Kansas, Kentucky, Louisiana,

Mississippi, Missouri, North Dakota, and Tennessee, and other states are considering bans as

well. *See* ABC News Video, *States Ban "Spice" Drug*, July 30, 2010

http://abcnews.go.com/OnCampus/video/states-ban-spice-drug-marijuana-lawmakers-doctors-

11293077.

34. In a transparent rip-off of Lorillard's Marks, Defendants each market and sell a

variety of menthol "spice" under the name NEWPROT. This blatant attempt to trade on the

distinctive and famous NEWPORT Marks is all the more brazen because Defendants market the

NEWPROT herbal incense in packaging that pirates the NEWPORT Trade Dress, as seen below:

14

  

35.     As the above pictures amply illustrate, the packaging of the NEWPROT product

marketed and sold by Defendants (the "Infringing NEWPROT Design") simply copies

Lorillard's registered NEWPORT Trade Dress wholesale.  The Infringing NEWPROT Design

copies each and every unique and distinctive element of the NEWPORT Trade Dress, with the

only differences being the misspelling of "Newport" and the addition of the words "herbal

potpourri mint" at the bottom of the trade dress.

36.     Incredibly, the Infringing NEWPROT Design even includes an ® next to the

word NEWPROT, falsely indicating that it is a federally registered trademark.  Likewise, the

sales information for the NEWPROT product on Abujamous's www.spice99wholesale.com

website also contains an ® next to the word NEWPROT:



37.     The reverse side of some of the packages of the NEWPROT Product provide a

website address (www.deviltracks.com) and phone number (877-717-7423) to call regarding the

15

product. The phone number listed on the NEWPROT Package is the phone number for Defendant Global Market Direct.

38.     Defendants intend by their use of NEWPROT and the Infringing NEWPROT Design to trade off the resounding consumer goodwill of Lorillard's Marks.

39.     Defendants package the NEWPROT Product in small (.5 gram, 1 gram and 3 gram) quantities, reminiscent of street-level quantities of illegal drugs. As shown below, the contents of a .5 gram package of NEWPROT Product are approximately the size of a quarter.



40.     Sold in such small quantities, the NEWPROT product could not possibly be intended for use as a potpourri or for scent. Rather, these quantities, like Defendants' decision to blatantly steal Lorillard's Marks, makes clear that this is a smoking product, not a harmless "potpourri."

41.     There is no association or affiliation of any kind between Lorillard and Defendants, and Defendants are using Lorillard's Marks, the NEWPROT designation and the Infringing NEWPROT Design without Lorillard's permission or consent. Lorillard has no control over the manner of Defendants' use of Lorillard's Marks, or the nature or quality of products advertised, promoted, and offered by Defendants.

42.   Defendants' actions have caused, or are likely to cause, great and irreparable injury to Lorillard, including irreparable injury to its goodwill and reputation, for which Lorillard has no adequate remedy at law.

43.   Defendants' use of Lorillard's Marks, the NEWPROT designation and the Infringing NEWPROT Design in connection with a mint herbal potpourri product has the potential to diminish consumer opinion of Lorillard's Marks and NEWPORT brand cigarettes by associating them with inferior, and in some cases, illegal products.  Consumers dissatisfied with, or shocked by, Defendants' NEWPROT mint herbal potpourri may then avoid Lorillard's NEWPORT brand menthol cigarettes, and other consumers may believe Lorillard and its NEWPORT brand cigarettes are associated with illicit or illegal products and/or activities.

44.   Upon information and belief, Defendants will continue to commit the acts complained of unless enjoined.

45.   Upon information and belief, Defendants' acts were deliberately and intentionally carried out in bad faith, or with a reckless disregard for or with willful blindness to Lorillard's rights in Lorillard's Marks, for the purpose of trading on Lorillard's reputation and diluting Lorillard's Marks.

46.   Pursuant to 15 U.S.C. § 1117, Lorillard is entitled to recover the costs of this action.  The intentional nature of Defendants' unlawful acts renders this an "exceptional case," entitling Lorillard to an award of attorneys' fees under 15 U.S.C. § 1117(a).

47.   Through the actions alleged herein, each Defendants has intentionally and willfully used counterfeit marks or designations, knowing such marks or designations to be counterfeit, in connection with the sale, offering for sale, or distribution of goods or services, and/or provided goods or services necessary to the commission of such a violation with the intent

that the recipient of those goods or service would them to us in committing such a violation. As such, Lorillard is entitled to recover either treble damages under 15 U.S.C. § 1117(b) or statutory damages under 15 U.S.C. § 1117(c), as well as prejudgment interest.

## COUNT I
### Federal Trademark Infringement and Trademark Counterfeiting
### 15 U.S.C. § 1114
### (Infringement of Registered NEWPORT Marks and Registered NEWPORT Trade Dress)

48.    Paragraphs 1 through 46 are incorporated and made a part of this Count.

49.    Defendants are using reproductions, counterfeits, copies or colorable imitations of Lorillard's Marks, which are the federally-registered, in commerce in connection with the sale, offering for sale, distribution and/or advertising of smoking products that do not originate with, and are not sponsored by or affiliated with, Lorillard.

50.    Defendants are applying reproductions, counterfeits, copies or colorable imitations of Lorillard's Marks in advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of smoking products that do not originate with, and are not sponsored by or affiliated with, Lorillard.

51.    Defendants' actions are likely to cause confusion, mistake, or deception as to the source of origin of the smoking products offered by Defendants in connection with Lorillard's Marks, in that customers and potential customers are likely to believe that the smoking products offered by Defendants in connection with reproductions, counterfeits, copies or colorable imitations of Lorillard's Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Lorillard.

52.    Defendants' actions are likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing,

affiliation, association, or some legitimate connection between the smoking products provided by Defendants in connection with Lorillard's Marks and Lorillard's NEWPORT brand cigarettes.

53.    As a direct and proximate result of the likely confusion, mistake, or deception, Lorillard has suffered and will continue to suffer irreparable harm if the conduct of Defendants is not enjoined.

54.    The likely confusion, mistake, or deception caused by Defendants is in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II
### Federal Trade Dress Infringement
### 15 U.S.C. § 1125
### (Infringement of NEWPORT Trade Dress)

55.    Paragraphs 1 through 53 are incorporated and made a part of this Count.

56.    Defendants' use of the NEWPORT Trade Dress constitutes use of a term, name symbol and device and use of a false designation of origin, all of which is likely to cause confusion, mistake, or deception as to the source of origin of the products provided by Defendants in connection with the NEWPORT Trade Dress in that customers and potential customers are likely to believe that such products are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Lorillard.

57.    Defendants' use of the NEWPORT Trade Dress is likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between the products provided by Defendants in connection with the NEWPORT Trade Dress and Lorillard's NEWPORT products.

58.     As a direct and proximate result of the likely confusion, mistake, or deception, Lorillard has suffered and will continue to suffer irreparable harm if the conduct of Defendants is not enjoined.

59.     The likely confusion, mistake, or deception caused by Defendants is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III
## Federal Unfair Competition
## 15 U.S.C. § 1125(a)
## (Infringement of Lorillard's Marks)

60.     Paragraphs 1 through 58 are incorporated and made a part of this Count.

61.     Defendants' actions constitute use of terms, names, symbols and devices, and use of false designations of origin, all of which is likely to cause confusion, mistake, or deception as to the source of origin of the products provided by Defendants, in that customers and potential customers are likely to believe that such products are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Lorillard.

62.     Defendants' actions are likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between the products provided by Defendants and Lorillard's NEWPORT products.

63.     As a direct and proximate result of the likely confusion, mistake, or deception, Lorillard has suffered and will continue to suffer irreparable harm if the conduct of Defendants is not enjoined.

64.     The likely confusion, mistake, or deception caused by Defendants is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IV
## Federal Trademark Dilution
## 15 U.S.C. § 1125(c)
## (Dilution of Lorillard's Marks)

65.     Paragraphs 1 through 63 are incorporated and made a part of this Count.

66.     The NEWPORT Marks and the NEWPORT Trade Dress are famous trademarks within the meaning of 15 U.S.C. § 1125(c), and became famous before Defendants began using Lorillard's Marks on non-genuine goods. Lorillard's Marks are advertised and used extensively throughout the United States, and are highly recognizable by the trade and consuming public. Further, Lorillard actively polices the use of Lorillard's Marks by third parties.

67.     Defendants are engaged in a commercial use of Lorillard's Marks.

68.     Defendants' actions are disparaging and damaging, and are likely to cause dilution of Lorillard's Marks through, at the very least, blurring and tarnishing.

69.     Defendants' actions dilute by blurring Lorillard's Marks and by impairing the distinctiveness of Lorillard's Marks.

70.     Defendants' actions tarnish Lorillard's Marks by, at least, using Lorillard's Marks to sell a lower quality and in some cases illegal product.

71.     As a result of the above-described diluting and disparaging activities of Defendants, Lorillard has suffered, and will continue to suffer, irreparable injury and substantial damages, while Defendants have been and will continue to be unjustly enriched.

72.     The likely dilution of Lorillard's Marks caused by Defendants is in violation of section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT V
### Virginia Common Law Unfair Competition

73.     Paragraphs 1 through 71 are incorporated and made a part of this Count.

74.     Defendants' conduct constitutes unfair competition in violation of Lorillard's rights.

75.     As a direct and proximate result of Defendants' unfair competition, Lorillard has suffered and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

76.   Defendants' acts were taken in willful, deliberate and/or intentional disregard of Lorillard's rights.

**JURY DEMAND**

Lorillard respectfully requests a jury trial for this matter.

**WHEREFORE,** Lorillard prays for judgment against Defendants as follows:

A.   Preliminarily and permanently enjoining and restraining Defendants California Imports, LLC, its directors, members, officers, agents, servants, employees, subsidiaries, and affiliates, Sunrise Wholesale LLC, its directors, members, officers, agents, servants, employees, subsidiaries, and affiliates, Global Market Direct Ltd., its directors, members, officers, agents, servants, employees, subsidiaries, and affiliates, M.H.M.A. Corporation, its directors, members, officers, agents, servants, employees, subsidiaries, and affiliates, Mike Jones, Mohammad "Moe" Abujamous, and John Does 1-10, and all persons in active concert or participation with, through, or under any of them, at first during the pendency of this action and thereafter perpetually:

1.   from committing any acts of unfair competition and from implying a false designation of origin or a false description or representation with respect to Lorillard's Marks;

2.   from using in any manner packaging, labels, signs, literature, display cards, Internet website, or other packaging, advertising, or promotional materials, or other materials related to Defendants' goods, bearing Lorillard's Marks, and any other mark, word, or name confusingly similar to those marks;

4.   from making any statements on promotional materials or advertising for Defendants' goods that are false or misleading as to source or origin;

5.  from using any designation that is likely to disparage, tarnish or dilute the distinctive quality of Lorillard's Marks; and

6.  from committing any acts of deceptive, unlawful or unfair acts calculated to cause members of the trade or purchasing public to believe that Defendants' goods are the goods of Lorillard or are sponsored by or associated with, or related to, or connected with, or in some way endorsed or promoted by Lorillard under the supervision or control of Lorillard.

C.  Requiring that Defendants deliver up to Lorillard any and all containers, signs, packaging materials, printing plates, and advertising or promotional materials and any materials used in the preparation thereof, which in any way unlawfully use or make reference to Lorillard's Marks in connection with Defendants' goods.

D.  Requiring that Defendants, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon Lorillard's counsel a written report under oath setting forth details of the manner in which Defendants have complied with the Court's order pursuant to paragraphs A through C above.

E.  Ordering the seizure of goods and counterfeit marks involved in the Defendants' violations and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation, pursuant to 15 U.S.C. § 1116(d).

F.  In connection with Defendants' acts of federal trademark and trade dress infringement and dilution, and of unfair competition, requiring Defendants to account and pay over to Lorillard all damages sustained by Lorillard, Defendants' profits, Lorillard's attorneys' fees and costs, and ordering that the amount of damages awarded Lorillard be increased three times the amount thereof.

G.     In connection with Defendants' acts of federal trademark counterfeiting, requiring Defendants to account and pay over to Lorillard all damages sustained by Lorillard, Defendants' profits, Lorillard's attorneys' fees and costs, and granting Lorillard either treble damages or statutory damages, plus prejudgment interest, pursuant to 15 U.S.C. § 1117.

H.     That Lorillard be awarded punitive damages for Defendants unfair competition under Virginia law, in view of Defendants' wanton and deliberate illegal acts committed with oppression, fraud, or malice.

I.     That Lorillard be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted on November 5, 2010.

**LORILLARD TOBACCO COMPANY**

**and**

**LORILLARD LICENSING COMPANY, L.L.C.**

By Counsel

Robert M. Tyler (VSB No. 37861)
rtyler@mcguirewoods.com
William N. Federspiel (VSB No. 76716)
wfederspiel@mcguirewoods.com
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
Telephone: 804.775.1000
Facsimile: 804.775.1061

Attorneys for Plaintiffs Lorillard Tobacco Company and
Lorillard Licensing Company, L.L.C.