**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

NOV -5 2010

---

**LORILLARD TOBACCO COMPANY
and
LORILLARD LICENSING COMPANY, L.L.C.**

      **Plaintiffs,**

**v.**

**CALIFORNIA IMPORTS, LLC, SUNRISE
WHOLESALE LLC, GLOBAL MARKET DIRECT
LTD., MIKE JAMES, MOHAMMAD "MOE"
ABUJAMOUS, M.H.M.A. CORPORATION, and
JOHN DOES 1-10,**

      **Defendants.**

Civil Action No. 3:10-cv-817

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER, SEIZURE ORDER AND EXPEDITED DISCOVERY

### INTRODUCTION

The trademark infringers and counterfeiters in this case sell "herbal incense potpourri," part of an emerging new wave of drug use spreading rapidly throughout the United States. Such "herbal incenses" are actually mixes of dried herbs, tobacco leaves, and other similar materials that are coated with synthetic cannabinoid compounds that mimic the effects of tetrahydrocannabinol ("THC"), the active ingredient in marijuana. Users of these herbal incenses (commonly known as "spice" or "K2") smoke them to get a marijuana-like high. This is not a product that a reputable brand owner would come anywhere near.

And yet Defendants California Imports, LLC, Sunrise Wholesale LLC, Global Market Direct LTD., Mike James, Mohammad "Moe" Abujamous and M.H.M.A. Corporation are wholesaling, distributing and retailing an "herbal incense potpourri" product in Virginia and

North Carolina under the name NEWPROT, in packaging that copies the famous trade dress

associated with NEWPORT brand cigarettes.  Regardless of whether Defendants' actions are

legal as a matter of criminal law, Defendants' choice of the name and package design for their

product constitute a bald-faced violation of federal and state trademark laws.  For this reason,

Plaintiffs Lorillard Tobacco Company and Lorillard Licensing Company, L.L.C. (collectively

"Lorillard"), owners of the trademark and trade dress rights in the famous NEWPORT brands,

have sued to stop this blatant piracy and respectfully submit this memorandum in support of their

Motion for *Ex Parte* Temporary Restraining Order, Seizure Order and Expedited Discovery.

Defendants should be enjoined from infringing upon, and diluting the distinctive quality of,

Lorillard's famous NEWPORT trademarks and trade dress.  Lorillard also seeks an order

permitting the seizure of physical and documentary evidence of Defendants' wrongful acts,

prohibiting Defendants from taking any steps to destroy evidence of their infringement and

dilution, and allowing Lorillard to conduct expedited discovery to identify the full scope of this

scurrilous scheme and its participants.

**STATEMENT OF FACTS**

**A.    Lorillard and Lorillard's Marks**

Lorillard is the nation's third largest tobacco company.  (Decl. of Victor Lindsley ¶ 3,

attached as Ex. 1 ("Lindsley Decl.").)  Lorillard was founded in 1760 and is the oldest

continuously operating company in the United States.  (*Id.*)  Lorillard manufactures and sells

cigarettes in the United States under a number of different brand names, including NEWPORT,

Lorillard's leading brand.  (*Id.*)

Lorillard first introduced its NEWPORT brand to the market in 1956.  (*Id.*)  Since then,

Lorillard has invested substantial time, effort and money in advertising and promoting cigarettes

2

under the NEWPORT brand throughout the United States. (*Id.* ¶ 10.) Lorillard consistently

spends many millions of dollars each year in promotional and marketing expenditures directly

relating to the NEWPORT brand. (*Id.*) Such advertising and promotion includes print media, an

Internet site, point of sale advertising, point of sale displays, and direct mail to consumers. (*Id.*)

Lorillard commonly advertises through posters and point of sale displays at retail locations,

including convenience stores. (*Id.*)

Lorillard has established and maintained a reputation among smokers for quality and

consistency in its products. (*Id.* ¶ 3). As a result of Lorillard's excellent reputation and

investment in its brands, NEWPORT brand cigarettes rank as the best selling brand of menthol

cigarettes sold in the United States, and the second best selling cigarette brand overall, with

10.88% of the national menthol market. (*Id.*)

Lorillard has sought to protect its brand investments by, among other things, registering

numerous trademarks with the United States Patent and Trademark Office. (*Id.* ¶ 4.) As relevant

here, Lorillard owns U.S. Reg. No. 1,108,876, which protects the word-mark NEWPORT (the

"NEWPORT Mark"). (*Id.*) This registration issued on December 12, 1978 and the mark became

incontestable in 1983, pursuant to section 15 of the Lanham Act, 15 U.S.C. § 1065. (*Id.*;

Certificate of Registration attached as Ex. A to Lindsley Decl.). This registration remains in full

force and effect, and is conclusive evidence of the validity of the NEWPORT mark, of

Lorillard's registration and ownership of the NEWPORT Mark, and of Lorillard's exclusive right

to use the NEWPORT Mark.

Lorillard also has registered the mark NEWPORT & Design (the "NEWPORT & Design

Mark") (U.S. Reg. No. 1,191,816). (Lindsley Decl. ¶ 5; Certificate of Registration attached as

Ex. B to Lindsley Decl.) The NEWPORT & Design Mark is displayed below together with a

3

depiction of the NEWPORT & Design Mark as it appears on packaging for Lorillard's

NEWPORT brand cigarettes.

          

This registration issued on March 9, 1982, and became incontestable in 1987.  It, too, is in full

force and effect and is conclusive evidence of the validity of the NEWPORT & Design Mark, of

Lorillard's registration and ownership of the NEWPORT & Design Mark, and of Lorillard's

exclusive right to use the NEWPORT & Design Mark.  (Lindsley Decl. ¶ 5.)

To further protect its investments in the NEWPORT brand, Lorillard has developed

unique and distinctive packaging graphics for its NEWPORT brand cigarettes.  (*Id.* ¶ 6.)

NEWPORT cigarettes have been packaged and sold in an inherently distinctive trade dress since

1969 (the "NEWPORT Trade Dress") (collectively with the marks identified above, "Lorillard's

Marks").  (*Id.* ¶ 7.)  The NEWPORT Trade Dress, pictured below, includes the following unique

and distinctive elements: 1) a rectangle design with white at the top portion of the rectangle; 2)

the stylized green word "Newport" written in the white portion of the rectangle; 3) a gold

horizontal stripe immediately adjacent to the white portion of the rectangle; 4) the portion of the

rectangle below the gold horizontal stripe in green with a black horizontal stripe pattern; and 5) a

white spinnaker in the lower right corner of the rectangle.



These unique and distinctive elements of the NEWPORT Trade Dress are not functional and as serve to identify Lorillard as the source of origin of the product and to signify the product's premium quality and value to consumers. (Lindsley Decl. ¶ 8.)

Lorillard has obtained several federal registrations protecting elements of the NEWPORT Trade Dress, individually and in gross. U.S. Reg. Nos. 2,600,870 and 1,178,413 remain in full force and effect and are conclusive evidence of the validity of the NEWPORT (Stylized) mark and the Spinnaker mark, respectively, of Lorillard's registration and ownership of those marks, and of Lorillard's exclusive right to use those marks. (*Id.* ¶ 9, 10, Ex. I and J. United States Reg. Nos. 3,579,236, 3,836,509, 3,579,270, 3,601,464, 3,759,763 and 3,618,542 remain in full force and effect and are *prima facie* evidence of the validity of the NEWPORT Trade Dress elements they protect, and of Lorillard's registration, ownership and exclusive right to use the NEWPORT Trade Dress. (*Id.* ¶ 9, 11, Ex. C through H).

The NEWPORT brand and Lorillard's Marks are well known and recognized throughout the United States. (*Id.* ¶ 13.) Consumers recognize and rely upon Lorillard's Marks to identify authentic Newport cigarettes and to distinguish Lorillard's products from the products of others. (*Id.*) Lorillard's Marks are highly distinctive and famous. (*Id.*) Indeed, the NEWPORT brand is so well known that the NEWPORT Trade Dress is immediately recognizable to most consumers.

5

(*Id.*) Moreover, Lorillard's Marks became famous long before Defendants began marketing and selling their infringing products, to which we now turn.

**B.      Defendants and the NEWPROT Herbal Incense**

The "herbal incense" or "herbal potpourri" products at issue here are more commonly known on the streets by some of names such as "spice" or "K2." These products are typically a mélange of dried herbs, tobacco leaves, or other similar substances that have been sprayed with a synthetic cannabinoid compound that is similar to THC, the active ingredient in marijuana. *See* Megan Hoyer, *Negative Buzz Builds over Synthetic Drug Blend*, Virginian-Pilot, Oct. 18, 2010, available at http://hamptonroads.com/2010/10/negative-buzz-builds-over-synthetic-drug-blend ("*Negative Buzz*"); Malcolm Gay, *Synthetic Marijuana Spurs State Bans*, N.Y. Times, July 10, 2010 ("*Synthetic Marijuana Spurs State Bans*"). Herbal incense products laced with synthetic cannabinoids first appeared in Europe and the U.S. about four or five years ago, and have exploded in popularity. *See* Kevin Kirkpatrick, *Grassley Urges Congress to Help Stop Spread of K2*, Des Moines Register, Sept. 30, 2010 available at http://www.desmoinesregister.com/article/20100930/INDIANOLA01/100930006/Grassley-urges-Congress-to-help-stop-spread-of-K2 ("*Grassley Urges*"). Even though these products are typically labeled as not for human consumption, such warnings are a charade; these products are smoked, and are intended to smoked, in an effort to replicate a marijuana high. *See Synthetic Marijuana Spurs State Bans*.

Though these products and the various synthetic cannabinoids used in them are not yet illegal under federal law, many states and localities around the country have recently enacted bans on the sale of these products. *See* ABC News Video, *States Ban "Spice" Drug*, July 30, 2010 http://abcnews.go.com/OnCampus/video/states-ban-spice-drug-marijuana-lawmakers-

doctors-11293077. Most of these state and local bans are the product of serious concerns regarding the safety of herbal incense products. At least one death and scores of emergency room visits have been linked to use of herbal incense products such as the ones Defendants market and sell. *See Grassley Urges*; *Synthetic Marijuana Spurs State Bans*; *Negative Buzz*. Some experts believe that, in addition to these safety concerns, many herbal incense products contain impurities or added ingredients that cause serious side effects. *See Synthetic Marijuana Spurs State Bans*; Mary Carmichael, *Fake-Pot Panic*, Newsweek, Mar. 4, 2010 available at http://www.newsweek.com/2010/03/03/fake-pot-panic.html ("*Fake Pot Panic*").

Lorillard recently became aware that the defendants in this action are selling "spice" under names and in packaging bearing virtually indistinguishable representations of Lorillard's Marks. Among other products, Defendants California Imports, Sunrise Wholesale, Global Market Direct, James and Abujamous market and wholesale a variety of synthetic cannabis products in Virginia. (*See* Decl. of John Clark, attached as Ex. 2; Decl. of Janie Hellman, attached as Ex. 3; Decl. of Jill Cleven, attached as Ex. 4; Decl. of Steve Cox, attached as Ex. 5.) Defendant M.H.M.A. Corp. markets and retails such products through a location in Richmond known as Jordan Food Mart. (*See* Decl. of John Clark ¶ 6.) The product in question here is shown below, next to the NEWPORT Trade Dress.

7

| NEWPORT Trade Dress | Infringing NEWPROT Trade Dress |
|---|---|
|  |  |

The likeness between the name and packaging of the NEWPROT Product and Lorillard's

Marks is undeniable and obviously intentional. The NEWPROT name is a blatant attempt to

trade on the distinctive and famous NEWPORT Marks and the goodwill Lorillard has developed

in the number one menthol cigarette brand in the United States.[1] The packaging of the

NEWPROT Product (the "Infringing NEWPROT Trade Dress") simply adopts Lorillard's

---

[1] Defendants' packaging and advertising materials for the NEWPROT Product even includes an ® symbol, falsely claiming that "NEWPROT" is a federally registered trademark.

8

registered NEWPORT Trade Dress. The Infringing NEWPROT Trade Dress copies each and

every unique and distinctive element of the NEWPORT Trade Dress, with the only differences

being the misspelling of "Newport," the depiction of the registered spinnaker design in reverse,

and the addition of the words "herbal potpourri mint" at the bottom of the trade dress.

Defendants package and sell the NEWPROT Product in small (.5 gram, 1 gram and 3

gram) quantities, reminiscent of street-level quantities of illegal drugs. As shown below, the

contents of a .5 gram package of NEWPROT Product are approximately the size of a quarter.



Those small quantities, Defendants' decision to sell through tobacco stores, and the decision to

Lorillard's Marks, all put paid to the lie that the NEWPROT product is a potpourri or a scent.

This is unquestionably a smoking product.

Defendants' marketing and sale of their NEWPROT Product are causing immediate and

irreparable harm to Lorillard. Lorillard's Marks identify Lorillard as the source of the products

and signify the enormous consumer goodwill that Lorillard has assiduously built in the

NEWPORT brand and the menthol smoking category over several decades. Defendants'

marketing and sale of their NEWPROT mint "spice" significantly diminishes this valuable

goodwill. As seen in the chart above, Defendants' NEWPROT Product is named, packaged and

9

sold to suggest an association with Lorillard. Consumers viewing Defendants' Infringing NEWPROT Trade Dress are likely to believe that Lorillard or the NEWPORT brand of menthol cigarette is associated with Defendants' minty "spice" product. The association Defendants seek create with their Infringing NEWPROT Trade Dress is no doubt amplified by the channels through which Defendants market their smoking product; the NEWPROT product is sold in convenience stores and tobacco shops, right alongside Lorillard's NEWPORT brand cigarettes. (*See* Decl. of Charles Cox Jr. ¶ 6 attached as Ex. 6; Decl. of Jill Cleven ¶ 3.) And, like Lorillard, Defendants engage in point of sale advertising, which includes posters featuring the Infringing NEWPROT Trade Dress. (*See* Decl. of Jill Cleven ¶ 6.) Indeed, the Infringing NEWPROT Trade Dress on such advertisements was what caught the attention of one of Lorillard's sales representatives who first discovered Defendant's product. (*See Id.* ¶ 3.)

Consumer confusion resulting from Defendants' Infringing NEWPROT Trade Dress may cause consumers to mistakenly believe that Lorillard has chosen to engage in an illicit, and sometimes, illegal activity. Other consumers lured by Defendants' Infringing NEWPROT Trade Dress may be dissatisfied with Defendants' NEWPROT product. In either case, consumers confused by Defendants' Infringing NEWPROT Trade Dress may choose to avoid the genuine NEWPORT brand in the future. The mere linkage of Lorillard's Marks and synthetic cannabis product cannot help but to sully Lorillard's reputation and to blur and tarnish the distinctive quality of those famous marks, causing irreparable damage to Lorillard and Lorillard's Marks.

Since discovering the existence of the NEWPROT Product, Lorillard has been alarmed to learn that the products appear to be spreading rapidly throughout Virginia and North Carolina. Within the last two weeks, Lorillard has identified at least five stores carrying the NEWPROT Product in Virginia, and four stores carrying the product in North Carolina, at least one of which

purchased the product online from Defendant Abujamous. (*See* Decl. of Janie Hellman ¶ 7-8.) Given the rapid spread and counter-culture nature of Defendants' NEWPROT Product, the potential for grievous irreparable harm to Lorillard's NEWPORT brand and Lorillard's Marks is imminent and enormous.

Lorillard needs to stop this pernicious assault on its valuable trademarks root and branch. Given the nature of the NEWPROT Product, Lorillard is seriously concerned that Defendants (and those as-yet-unidentified parties working in concert with them) will destroy evidence related to this case should they receive notice of it. For that reason, Lorillard seeks to have this action maintained under seal until service of the requested temporary restraining order, and is moving for that relief *ex parte*. The reasons for that are easy to comprehend. Though this is Lorillard's first encounter with dealers of synthetic marijuana, Lorillard has considerable experience dealing with counterfeiters of cigarettes.[2] Defendants' theft of the Lorillard Marks for use in connection with "spice" is the moral equivalent of such counterfeiting, with the only difference being that Defendants have placed their Infringing NEWPROT Trade Dress on a synthetic marijuana. In Lorillard's substantial experience, producers and retailers of counterfeit cigarettes routinely disregard judicial process. (Decl. of Hanna Hasl-Kelchner, ¶¶ 10-14, attached as Ex. 7. Over the course of prosecuting over 200 counterfeiting cases – each of them against a business entity with a "permanent" location – Lorillard has seen numerous instances of defaults, the hiding of counterfeit inventory, failure to respond to discovery, failure to appear at a deposition, violations of restraints, and breaches of settlement agreements. (*Id.*)

---

[2] *See, e.g., Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, Civ. Nos. 03-C-5311 and 03-C-4844, 2008 U.S. Dist. LEXIS 31761 (N.D. Ill. Apr. 17, 2008); *Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*, Civ. No. 05-70804, 2008 U.S. Dist. LEXIS 6965 ( E.D. Mich. Jan. 31, 2008); *Lorillard Tobacco Co. v. Atl. Produce & Supermarket*, Civ. No. No. 06-951 (JBS), 2007 U.S. Dist. LEXIS 30337 (D.N.J. Apr. 23, 2007).

Indeed, the Defendants here have already demonstrated a predilection for furtive, shady activity. Three defendants, California Imports, LLC, Sunrise Wholesale LLC, and Global Direct Market Ltd., hold themselves out as corporations or limited liability companies based in Virginia, yet none of them has registered with the Virginia State Corporation Commission ("SCC") for service of process.[3] Abujamous, a Virginia resident, sells the NEWPROT Product through his website www.spice99wholesale.com, but misleading registered that domain name using only the name and address "m m, 77, h, Florida 27870." Only Defendant M.H.M.A. Corp. has complied with Virginia law and properly registered with the SCC. Nonetheless, M.H.M.A. has chosen to sell synthetic marijuana, a choice that calls its judgment into question. M.H.M.A. is apparently concerned about their decision to sell "spice" products, as they would not sell one to a paralegal when he directly sought them out, even though they had the products on hand. (*See* Decl. of Charles Cox, Jr. ¶ 2-5.)

Defendants' choice of product for their Infringing NEWPROT Trade Dress only serves to amplify Lorillard's concerns that Defendants' will ignore judicial process and destroy evidence prior to discovery.

---

[3] While the SCC's LLC database has a record for "California Imports LLC", that record does not match the information shown on Defendant California Imports, LLC's invoices or domain registration. The California Imports listed in with the SCC was registered in 2004, with a principal office in Glen Allen, Virginia. Defendant California Imports, LLC is based in Ashland, Virginia. Even assuming *arguendo* that the two entities are the same, it is clear that Defendant California Imports has failed to fulfill its responsibility to maintain current records with the SCC for purposes of service of process.

## ARGUMENT

A.   **Lorillard Is Entitled to an *Ex Parte* Temporary Restraining Order**

1.   **Standard for a Temporary Restraining Order**

The standard for granting a temporary restraining order is the same as that for granting a preliminary injunction. *See Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006). Namely, the movant must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008); *see also Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010).

Applying this test here, Defendants' conduct, and the irreparable harm inevitably resulting from it, warrant entry of a temporary restraining order.  Lorillard has brought claims for trademark infringement, trademark dilution, trade dress infringement, trade dress dilution, and unfair competition, and while Lorillard is likely to prevail on each of its claims, it only need prove likely success on *one* to satisfy the first element of the injunctive relief standard. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 553 n.5 (4th Cir. 1994).  Further, since Lorillard is suffering irreparable harm as a result of Defendants' conduct, the balance of equities tips sharply in Lorillard's favor, and the public interest will be served by immediate injunctive relief.

**2.     Lorillard Is Likely to Succeed on the Merits of Its Trademark and Unfair Competition Claims**

**a.     Trademark Infringement and Unfair Competition Claims**

"[T]o prevail under §§ 32 and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). Lorillard easily satisfies these requirements.

As to the first element, Lorillard has asserted valid, federally registered trademarks. As a matter of federal law, Lorillard's registrations for the NEWPORT Mark, the NEWPORT & Design Mark, the NEWPORT (Stylized) mark and the Spinnaker design are incontestable. As such, those registrations are "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b); *Lone Star Steakhouse*, 43 F.3d at 930. Lorillard's other registrations related to the NEWPORT Trade Dress constitute *prima facie* evidence of the validity of those design element marks, their registration, and Lorillard's ownership and exclusive rights to use the marks in commerce. 15 U.S.C. § 1115(a). Moreover, Lorillard has been using the NEWPORT Mark and the NEWPORT & Design Mark in commerce since 1956, and the NEWPORT Trade Dress in commerce since 1969.

As to the second element, Defendants' wholesale copying of Lorillard's Marks demonstrates knowing use of those marks, and a shrewdly calculated move to capitalize on Lorillard's accrued goodwill and brand loyalty in the menthol mint category. Such copying leaves little doubt about the likelihood of confusion or ability to inflict irreparable harm. In

14

addition, such blatant copying entitles Lorillard to a presumption of secondary meaning and a presumption of a likelihood of confusion. *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 163, 165 (4th Cir. 1990). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Id.* at 164 n.6 (*quoting AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979)). There can be no doubt that Defendants are knowingly using an almost exact copy of Lorillard's Marks to sell their synthetic marijuana. Defendants' Infringing NEWPROT Trade Dress copies the unique and distinctive elements of Lorillard's Marks. Accordingly, the burden falls on Defendants to prove that customers are not likely to be deceived from its use of the NEWPORT Marks. *Osem*, 917 F.2d at 165. That is a burden that Defendants cannot hope to satisfy.

Indeed, Lorillard can amply demonstrate likelihood of confusion, even without a presumption in its favor. In the Fourth Circuit, courts generally consider the following factors in determining whether a likelihood of confusion exists:

(1)     the strength or distinctiveness of the mark;

(2)     the similarity of the two marks;

(3)     the similarity of the goods/services the marks identify;

(4)     the similarity of the facilities the two parties use in their businesses;

(5)     the similarity of the advertising used by the two parties;

(6)     the defendant's intent; and

(7)     any evidence of actual confusion.

*See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). "Not all these [factors] are always relevant or equally emphasized in each case." *Id.* Even a cursory review of these

factors shows that Lorillard will likely prevail on the merits in showing that its marks are being infringed:

- Strength or Distinctiveness of the Mark: Lorillard's Marks are strong and distinctive. As an initial matter, an arbitrary mark such as NEWPORT for cigarettes is inherently distinctive and is a strong mark. *See Pizzeria Uno*, 747 at 1527. Moreover, Lorillard has been using the NEWPORT Mark and the NEWPORT & Design Mark since at least 1956, and the NEWPORT Trade Dress since at least 1969. (Lindsley Decl. ¶ 3, 7.) Lorillard continues to actively use the NEWPORT Marks in its advertising and the NEWPORT Trade Dress to sell its products to this day. (*Id.* ¶ 10-11.) Moreover, Lorillard has spent many millions of dollars over several decades promoting, marketing and advertising the NEWPORT brand.

- Similarity of the Marks: The NEWPROT designation and the NEWPROT Trade Dress are virtually identical to Lorillard's Marks. Defendants' NEWPROT Designation is a transparent copy of Lorillard's NEWPORT Mark. The only difference between the two is the transposition of the "o" and the "r." This "typo" is a minor difference doing nothing to distinguish Defendants' NEWPROT Designation from Lorillard's famous NEWPROT Mark. Moreover, Defendants' Infringing NEWPROT Trade Dress appropriates every unique and distinctive element of the NEWPORT & Design Mark and the NEWPORT Trade Dress, with only immaterial changes – the transposed "o" and "r," the reversal of the federally-registered spinnaker design, and the addition of "herbal potpourri mint" at the bottom. The virtual identity of the marks when viewed side-by-side is undeniable:

16




- <u>Similarity of the Goods the Marks Identify</u>: Both marks are used in connection with the sale and advertising of smoking products.

- <u>Similarity of the Facilities the Two Parties Use in Their Businesses</u>: Lorillard's NEWPORT brand cigarettes are sold in convenience stores and tobacco shops. (Lindsley Decl. ¶ 3.) These are the exact same channels that Defendants use to sell their synthetic marijuana products. Indeed, California Imports current publicly-available price list indicates that California Imports wholesales both NEWPORT brand cigarettes and "herbal aromatic incense," such as the NEWPROT Product. (Decl. of Charles Cox Jr. ¶ 6.) The likelihood of confusion is virtually unavoidable in such circumstances.

- <u>Similarity of Advertising Used by the Two Parties</u>: Lorillard has not discovered all of the methods of advertising used by Defendants at this time. In addition to advertising their products via the Internet (*see* www.spice99wholesale.com), Defendants use poster displays at convenience stores. (Hellman Decl. ¶ 8; Cleven Decl. ¶ 6.) Lorillard also advertises NEWPORT brand cigarettes through display advertising in convenience stores. (Lindsley Decl. ¶ 10.)

- <u>Defendants' Infringing Intent</u>: Defendants' intent is clear. Where a defendant copies a competitor's trademark, "its intent must be to benefit from the goodwill of the competitor's customers by getting them to believe that the new product is either the same,

or originates from the same source as the product whose [trademark] was copied." *Osem,* 917 F.2d at 165.

On this evidence, even without the benefit of a presumption of a likelihood of confusion, it is readily apparent that Lorillard will prevail in its attempt to establish a likelihood of confusion.

### b.    Trademark and Trade Dress Dilution Claims

To state a claim for dilution under the Federal Trademark Dilution Act, a plaintiff must show:

(1)    that it owns a famous mark that is distinctive;

(2)    that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark;

(3)    that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and

(4)    that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark.

*See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252, 264-65 (4th Cir. 2007).

A mark is "famous" when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Here there can be no doubt that Lorillard's Marks are widely recognized by the general consuming public and are therefore famous. NEWPORT brand cigarettes are very popular. They are the number one selling menthol cigarette brand in the United States and the second best selling cigarette brand overall. (Lindsley Decl. ¶ 3.) The NEWPORT Mark has been used since 1956, and the unique and distinctive NEWPORT Trade Dress has been used extensively and continuously in the sale of NEWPORT cigarettes since

1969. (*Id.*) Accordingly, the NEWPORT brand and marks are well known and recognized throughout the United States and consumers recognize and rely on the NEWPORT Marks to identify authentic Newport cigarettes and to distinguish Lorillard's products from the products of others. (*Id.* ¶ 11.)

Similarly, there can be little doubt that Defendants' Infringing NEWPROT Trade Dress and NEWPROT Designation are likely to dilute the distinctiveness of Lorillard's Marks and that the similarity between Defendants' offending marks and the NEWPORT Marks gives rise to an unwanted association between the marks. To determine whether a junior mark is likely to dilute a famous mark through blurring, the court should consider all factors relevant to the issue, including six factors enumerated in the statute:

    (i)    The degree of similarity between the mark or trade name and the famous mark.

    (ii)    The degree of inherent or acquired distinctiveness of the famous mark.

    (iii)    The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

    (iv)    The degree of recognition of the famous mark.

    (v)    Whether the user of the mark or trade name intended to create an association with the famous mark.

    (vi)    Any actual association between the mark or trade name and the famous mark.

15 U.S.C.A. § 1125(c)(2)(B).

Each of these statutory factors heavily weighs in favor of Lorillard. As already discussed above, there is more than a high degree of similarity between Defendants' Infringing NEWPROT Trade Dress and NEWPROT Designation and Lorillard's NEWPORT Marks. In addition, the NEWPORT Marks are highly distinctive and strong marks, and are also widely recognized as a

designation of source for Newport cigarettes. Moreover, the famous NEWPORT Marks and

Trade Dress are exclusively used by Lorillard. It is also clear that Defendants intended to create

an association with the NEWPORT Mark, otherwise there would be no reason to have so

thoroughly copied Lorillard's Marks. It is also clear that Defendants' Infringing NEWPROT

Trade Dress and NEWPROT Designation will succeed in creating such an association.

Moreover, Defendants' Infringing NEWPROT Trade Dress and NEWPROT Designation

are also likely to dilute Lorillard's Marks by tarnishment. Dilution by tarnishment is the result of

an "association arising from the similarity between a mark or trade name and a famous mark that

harms the reputation of the famous mark. 15 U.S.C. § 1125(c)(2)(C). Defendants' Infringing

NEWPROT Trade Dress and NEWPROT Designation are virtually identical to Lorillard's

Marks, but Defendants are using their marks to sell synthetic marijuana – a drug that is actively

being banned by states and localities across the country. Without question, Defendants'

NEWPROT Product creates a deleterious association with Lorillard's Marks.

### 3.   Lorillard Is Suffering Irreparable Harm from Defendants' Actions and Will Continue to Suffer Such Harm Absent a Temporary Restraining Order

To justify the issuance of a temporary restraining order, a plaintiff must show irreparable

injury. *Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1194 (S.D.N.Y. 1987).

Irreparable harm generally is presumed for purposes of a temporary or preliminary injunctive

relief in trademark infringement actions. "In Lanham Act cases involving trademark

infringement, a presumption of irreparable injury is generally applied once the plaintiff has

demonstrated a likelihood of confusion, the key element in an infringement case." *Scotts Co. v.

United Indus. Corp.,* 315 F.3d 264, 273 (4th Cir. 2002) (*citing Eli Lilly & Co. v. Natural

Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000) (holding "[i]rreparable harm is generally

presumed in cases of trademark infringement and dilution"); *see also Dial-A-Mattress Operating*

*Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1357-58 (S.D.N.Y. 1994) ("In an action alleging trade name or service mark infringement or unfair competition, the senior user of the mark is presumed to suffer irreparable harm to their good will and reputation when the activities of a competitor demonstrate a high probability of consumer confusion as to sponsorship of a trade name or service mark") (internal quotes omitted).

The irreparable harm to Lorillard in this case is readily apparent. Defendants have completely misappropriated Lorillard's Marks to sell synthetic marijuana. In so doing, Defendants are creating an association in consumers minds between the famous NEWPORT Marks and NEWPORT Trade Dress and synthetic marijuana, a highly controversial cousin of a Schedule I drug that many states and counties are actively working to make illegal. Consumers who view NEWPROT Product are likely to believe that there is some sponsorship or affiliation between Lorillard and the synthetic marijuana sold by Defendants. And, of course, creating that association in consumers' minds is the whole point of copying Lorillard's Marks. Lorillard's NEWPORT brand is one of the most successful brands of cigarettes in history. By marketing their product using almost counterfeit and copies of Lorillard's Marks, Defendants are trading on and diminishing the substantial goodwill that Lorillard built through decades of hard work and millions of dollars in promotional activity.

Given the substantial reputation and goodwill that Lorillard has established in Lorillard's Marks, Defendants are visiting irreparable harm upon Lorillard, and will continue to do so unless Defendants are forced to stop. A temporary restraining order is essential to protect Lorillard pending a resolution of this case on the merits.

4.    **Any Potential Harm to Defendants Would Be Minimal and Far Outweighed by the Harm Being Done to Lorillard**

While the harm to Lorillard would be substantial and irreparable should the Court decline to grant an *ex parte* temporary restraining order, the harm that would be experienced by Defendants should the Court grant Lorillard's motion will be slight. Lorillard seeks only to prevent Defendants from using Lorillard's Marks and to forestall the destruction of records relating to Defendants' infringing and diluting activities. Even enjoined, Defendants will remain free to market and sell their other synthetic marijuana products, wherever they have not yet been banned.

More to the point, however, even if Defendants were to suffer some inconvenience from being enjoined, this "harm" merits little equitable consideration. Defendants cannot complain of "harm" simply because they are prohibited from infringing upon and otherwise unfairly competing against Lorillard and confusing the public. *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 312 (D.N.J. 1998), *aff'd*, 159 F.3d 1351 (3d Cir. 1998) ("The Defendant cannot complain he will suffer irreparable injury if a preliminary injunction is issued because he misappropriated the Mark and the Name of the Plaintiff Organization with full knowledge of the rights of the Plaintiff.") (citations omitted).

Courts have made clear that where a defendant knowingly copies or approximates a plaintiff's trademark or trade dress, the possibility of a lawsuit is a risk the defendant assumed and the equities therefore weigh *against the defendant. See McNeil-PPC, Inc. v. Granutec, Inc.*, 919 F. Supp. 198, 204 (E.D.N.C. 1995) (holding that "any harm that might occur from the granting of an injunction is of [defendant's] own making" and the equities therefore "weigh heavily in favor" of the plaintiff); *see also Rubbermaid Commercial Prods., Inc. v. Contico Intern., Inc.*, 836 F. Supp. 1247, 1258 (W.D. Va. 1993) (while defendant could have chosen

22

features that would distinguish its product and avoid controversy, "[defendant's] knowing

entrance into a risky venture lays much of the harm at its own doorstep"). More to the point, as

the Sixth Circuit noted in another of Lorrillard's counterfeiting prosecutions, "the only 'harm'

that [a] contemplated injunction would visit upon [an accuser infringer and counterfeiter] is

hardly a legally cognizable one: It would be prohibited from selling counterfeit products, an

illegal act to begin with." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377,

382 (6th Cir. 2006). Here Defendants knowingly chose to steal Lorillard's Marks to market and

sell synthetic marijuana precisely because of the strength of Lorillard's Marks. The balance of

harms weighs heavily in favor of Lorillard.

> **5.      Enjoining Defendants' Trademark Infringement, Unfair Competition, and Dilution of the NEWPORT Marks Serves the Public Interests**

The public has a right not to be subjected to confusing and potentially misleading marks

or names so that it can rely upon trademarks to identify the source and quality of goods. *See*

*Commc'ns. Satellite Corp. v. Comet, Inc.*, 429 F.2d 1245, 1251 (4th Cir. 1970). "Public policy

concerns weigh in favor of preliminary injunctive relief in order to halt confusion in the

marketplace." *OmniAmerica Grp. v. St. Gold Records, Inc.*, 916 F. Supp. 672, 680 (N.D. Ohio

1996); *see also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) (holding

the "public interest is served by the injunction because enforcement of the trademark laws

prevents consumer confusion"). Here, the public interest is served by prohibiting Defendants

from using the NEWPORT Marks to advertise and sell synthetic marijuana that is not in fact

related in any way to NEWPORT brand cigarettes or sponsored by Lorillard.

> **6.      Lorillard Will Post Adequate Security for the Temporary Restraining Order.**

Rule 65(c) of the Federal Rules of Civil Procedure states that "[n]o restraining order or

preliminary injunction shall issue except upon the giving of security by the applicant, in such

sum as the court deems proper, for the payment of such costs and damages as may be incurred or

suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R.

Civ. P. 65(c). Lorillard is prepared to post security upon entry of the temporary restraining order

in the form of an injunction bond or letter of credit. However, Lorillard seeks only to stop the

infringement and dilution of Lorillard's Marks and to preserve evidence for trial. Lorillard does

not seek to disrupt any legitimate business activity, and Defendants will remain free to market

and sell their other products. Given the strength of Lorillard's case on the merits, and the

minimal anticipated costs of Defendants' compliance, Lorillard respectfully urges the court to

require a minimal security of $500.

**B.      The Court Should Order the Seizure of Evidence Concerning Defendants' Theft of Lorillard's Marks, and Should Permit Expedited Discovery to Establish the Scope of Defendants' Network.**

**1.      The Court Should Order the Seizure of Physical and Documentary Evidence of Defendants' Acts.**

Section 34 of the Lanham Act sets forth the detailed requirements that a victim of

trademark counterfeiting must satisfy in order to obtain an *ex parte* seizure order from a court.

15 U.S.C. § 1116(d). The procedural requirements are easily met here. Lorillard's application

for the seizure order is based on affidavits establishing sufficient facts to support the findings of

fact and conclusions of law required in a seizure order. 15 U.S.C. § 1116(d)(3)(A). It contains

"a particular description of the matter to be seized, and a description of each place at which such

matter is to be seized," namely, Defendants' places of business or, in the case of Abujamous,

place of residence. 15 U.S.C. § 1116(d)(5)(B). Lorillard is willing to post adequate security, as

determined by the court. 15 U.S.C. § 1116(d)(4)(A). Lorillard has not publicized the requested

seizure, and has given written notification to the United States Attorney of its intent to seek a

seizure order in this case.

24

Lorillard also satisfies the more substantive requirements of the Act, to which we now turn.

### a.   An Order Other Than An *Ex Parte* Seizure Order Is Inadequate To Achieve The Enforcement Purposes Of The Lanham Act

While a temporary retraining order will be crucial to Lorillard's efforts to halt the damage visited on it by Defendants' sale of synthetic marijuana using Lorillard's Marks, that is only a partial remedy.  Without an *ex parte* seizure order, Defendants are liable to destroy key evidence of their wrongdoing.  There is no reason to believe that these sellers of synthetic drugs, using counterfeit marks, will magically demonstrate compliance with or fidelity to the law once they are enjoined.  Though the NEWPROT Product may be, for the time being, legal, its class of goods is the subject of nationwide media attention, and all levels of government are actively engaged in efforts to prohibit the sale of it.  People who choose to sell these products are well aware of these potential issues and many may already have plans to dispose of or secrete their products away in case of governmental or law enforcement actions.  Moreover, "[c]onsistent with their calling, professional counterfeiters and dealers in counterfeit goods generally are not upstanding citizens. This presents a major obstacle to trademark owners trying to protect their marks." *Vuitton v. White*, 945 F.2d 569, 571 (3d Cir. 1991); *see also Lorillard Tobacco Co. v. Canstar (U.S.A.) Inc.*, No. 03-C-4769, 2005 U.S. Dist. LEXIS 10685 (N.D. Ill. Apr. 12, 2005) (noting the efforts of counterfeit cigarette distributors to withhold and destroy evidence).

Defendants' established disregard for Virginia's business laws, and for state and federal trademark law, gives every reason to believe that Defendants, or persons acting in concert with such person, likely would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.  "The purpose of the *ex parte* seizure provision is to provide victims of trademark counterfeiting with a means of ensuring that

the courts are able to exercise their jurisdiction effectively in counterfeiting cases." *Vuitton v. White*, 945 F.2d at 575 (*quoting* Joint Statement, 130 Cong. Rec. at H12080, reprinted in Gilson at 34-622). They are "a necessary tool to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court." *Id.*

Granted, Lorillard will take discovery of Defendants, and proposes to do so in an expedited fashion. Without a seizure order, however, Lorillard will likely find itself conducting discovery for materials and items that have long-since been disposed of by Defendants, and for which sanctions for spoliation and contempt of court will provide scant comfort or effectiveness.

**b.    Lorillard Is Likely To Show That Defendants Used A Counterfeit Mark In Connection With The Sale, Offering For Sale, Or Distribution Of Goods Or Services.**

The facts of this case, as alleged in Lorillard's Complaint and in supporting declarations, shows that Defendants are using counterfeit versions of Lorillard's Marks in connection with the sale, offering for sale, and distribution of synthetic marijuana, a smoking product. The Lanham Act defines a "counterfeit mark" as:

> (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered.

15 U.S.C. § 1116(d)(1)(B). "Counterfeit" is defined as something "made in imitation so as to be passed off fraudulently or deceptively as genuine; not genuine; forged." Webster's New Universal Unabridged Dictionary 461 (2003).

Defendants' Infringing NEWPROT Packaging and NEWPROT Designations are counterfeits under any definition. Defendants' NEWPROT Packaging and NEWPROT Designations are virtually identical to Lorillard's NEWPORT Marks and Trade Dress. By misappropriating Lorillard's famous marks, intend to pass off their smoking product as related to

Lorillard's NEWPORT brand cigarettes, when there is absolutely no such relationship. And, of course, the whole point of stealing Lorillard's Marks – which are registered and famous in connection with cigarettes – is to advertise and sell Defendants' own smoking product. As such, Lorillard easily satisfies this requirement.

> **c.  Lorillard Will Suffer Immediate and Irreparable Injury If Its Seizure Application Is Denied**

As we have discussed already, Defendants' sale of synthetic marijuana is already causing real, immediate and irreparable damage to the reputation of its NEWPORT brand. By creating an association between Lorillard's NEWPORT brand and synthetic marijuana in the minds of consumers, Defendants are damaging the significant goodwill and reputation for quality and value that Lorillard spent decades and many millions of dollars developing. Every day Defendants' infringing products remain available to the public further erodes Lorillard's NEWPORT brand. As already discussed, the *ex parte* seizure order together with the temporary restraining order that Lorillard now seeks are essential first steps to prevent further damage to Lorillard.

**2.  Lorillard Is Entitled to Expedited Discovery**

Getting the harm stopped is critical, as is gathering all available evidence in Defendants' possession relating to their scheme. In addition, though, Lorillard is entitled to know the full scope of that scope. Defendants are only one part of the problem related to this infringing use of Lorillard's Marks. The party that is producing and distributing the Infringing NEWPROT Trade Dress, and the synthetic marijuana it contains, is known to Defendants, but unknown to Lorillard. Lorillard needs expedited discovery to immediately identify this party so that it can be subjected to this Court's jurisdiction, and to the temporary restraining order and preliminary injunction Lorillard has sought, should the Court grant Lorillard's motion for such relief. Without stopping

the source of these infringing goods, Lorillard's efforts to put an end to the infringing distribution of synthetic marijuana under Lorillard's famous NEWPORT Marks will be severely hampered.[4]

To that end, Lorillard seeks leave to conduct immediate, limited discovery of Defendants and their known distribution network to learn the scope of their activity and to further ensure that evidence is not destroyed or lost. Lorillard seeks to serve interrogatories, requests for production of documents and requests for entry upon Defendants to determine both the source of the NEWPROT Product and the scope of its distribution. For the same reason, Lorillard also proposes to send Rule 45 deposition and document subpoenas to certain retailers known to have sold the NEWPROT Product. Lorillard's proposed discovery requests are attached as Exhibits 8 through 23. Lorillard respectfully requests that this Court permit Lorillard to serve these requests simultaneously with its Complaint, and the Court's order.

## CONCLUSION

If Defendants are permitted to continue using Lorillard's Marks during the pendency of this case, it will be virtually impossible for Lorillard to remedy the harm to Lorillard's Marks. Defendants' use of the NEWPORT Marks must be stopped before Lorillard and the public suffer irreparable harm through the confusion Defendants are obviously intending to cause. The *ex parte* temporary restraining order, seizure order and expedited discovery Lorillard has requested are necessary first steps to stop the harm Defendants are causing to Lorillard. As such, for the foregoing reasons, Lorillard respectfully requests that this Court enjoin Defendants from continuing their infringing and diluting use of the NEWPORT Marks, order the seizure of

---

[4] In addition to the requested seizure order, Lorillard requests that the Court permit it to enter Defendants' places of business, and Defendant Abujamous's personal residence, to photograph and document the relevant products and records that Defendants have on the premises.

28

evidence from Defendants and permit Lorillard it to take limited, immediate discovery of

Defendants' distribution network.

November 5, 2010                                  Respectfully Submitted,

                                                 **LORILLARD TOBACCO COMPANY**

                                                 **and**

                                                 **LORILLARD LICENSING COMPANY, L.L.C.**

                                                 By Counsel

                                                 Robert M. Tyler (VSB No. 37861)
                                                 rtyler@mcguirewoods.com
                                                 William N. Federspiel (VSB No. 76716)
                                                 wfederspiel@mcguirewoods.com
                                                 One James Center
                                                 901 East Cary Street
                                                 Richmond, Virginia 23219-4030
                                                 Telephone: 804.775.1000
                                                 Facsimile: 804.775.1061

                                                 Attorneys for Plaintiffs Lorillard Tobacco Company
                                                 and Lorillard Licensing Company, L.L.C.