IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LORILLARD TOBACCO CO. *et al.*,
        Plaintiffs,

v.                                                    Civil Action No. 3:10cv817-JAG

CALIFORNIA IMPORTS, LLC, *et al.*,
        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the plaintiffs' motion for an award of attorneys' fees. The Court has already held that the plaintiffs, Lorillard Tobacco Company and Lorillard Licensing, LLC (collectively referred to as "Lorillard"), will receive an award of fees. The remaining issue is the amount of fees to be awarded. The Court will award eighty percent of the fees and costs requested by the plaintiffs. A twenty percent reduction reflects some duplication of effort with related cases, some excessive costs, and a slight reduction in the hourly rate.

### I. Proceedings

Lorillard filed this suit claiming that the defendants had engaged in unfair competition in violation of the Lanham Act and Virginia's common law. In addition, Lorillard claimed that the defendants had unfairly diluted Lorillard's trademark. The parties tried this case to the Court without a jury. The plaintiffs prevailed, and the Court found that this is an "exceptional" case, justifying an award of attorneys' fees to the prevailing plaintiffs under 15 U.S.C. §1117(a).

The facts overwhelmingly favored Lorillard. Reduced to their essence, they are as follows: Lorillard manufactures an enormously a popular cigarette called Newport. Apparently Newport is one of the top selling brands in the United States. The cigarettes come in a

distinctive package with a well-known design, color scheme, and lettering. Lorillard has registered trademarks for the name and packaging. The defendants sold a brand of "spice" called "Newprot." They sold it in packages that looked almost precisely like Lorillard's cigarettes. "Spice" is a product, now illegal, that users smoke in order to feel euphoric. The name and packaging clearly copied the Newport name, logo, and design, and were obviously intended to borrow the Newport cachet.

Lorillard attacked the infringement on several fronts. In addition to the instant case, it filed suit in North Carolina against a party separate from the defendants in this case. Beside the defendants who went to trial, Lorillard also sued two additional companies in this case. Both those corporate defendants settled the dispute without going to trial.

Lorillard has now moved for an award of its fees. It has submitted an affidavit from lead counsel explaining the efforts expended in the litigation, the fees incurred, and the plaintiffs' nontaxable out-of-pocket costs. It has also filed an affidavit from an intellectual property lawyer dealing with the reasonableness of its fees and charges. In total, Lorillard seeks $289,970.55 in fees. It also asks for $28,908.55 in out-of-pocket expenses beyond those awarded when the Court taxed costs in this case.

The defendants have not responded to Lorillard's motion for an award of attorneys' fees.

## II. Analysis

In calculating an award of attorneys' fees, the Court "must first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the Johnson/Barber factors when making its lodestar determination." *United States ex rel. Vuyyuru v. Jadhav*, 555 F. 3d 337, 356 (4th Cir. 2009). The Fourth Circuit recognizes twelve "Johnson" factors that go into the lodestar calculus:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 357 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)). Applying the factors here, and considering the other evidence in the case, the Court reduces Lorillard's fee request by twenty percent.

**1) Time and labor expended.** The path of this case to judgment ran, like most civil cases, in fits and stops. At the outset, plaintiffs' counsel spent many hours obtaining an *ex parte* order allowing the seizure of the offending material. This included not only legal research and drafting, but also logistical planning to accomplish the seizures, and to do so simultaneously from several locations. To accomplish these tasks required the efforts of a number of lawyers and staff members, and a great deal of time was expended. After the initial foray, the parties settled into a more relaxed pace for discovery and case preparation. The defendants, however, used every dilatory tactic in the book to stymie Lorillard's discovery, including failing to appear at depositions and simply refusing to answer some written inquiries. Thus, the plaintiffs' discovery entailed more work, and therefore higher billings, than usual in a civil case, but the extra work resulted from the defendants' recalcitrance. Finally, the action picked up again as the parties finalized their trial preparations.

An expert on intellectual property litigation has reviewed the case file and concluded that Lorillard's counsel's efforts were reasonable. Given the circumstances of the case, the Court finds that a substantial award of fees is appropriate.

The Court finds, however, that some reduction is appropriate. As noted above, Lorillard fought this case on several fronts, with multiple defendants. While Lorillard has removed from its billings the time most directly related to other cases, the Court concludes that some of the time spent, such as research and preparation of pleadings, necessarily involved duplication of efforts among cases and among the parties to the instant case. Roughly the same research and drafting, for instance, would apply to both the North Carolina case and the Virginia case. By the same token, some of the work on the Virginia case necessarily involved two other defendants who settled their claims with Lorillard. In fact, Lorillard's counsel has submitted a time-sheet that includes contact with counsel for a co-defendant who settled and against whom Lorillard cannot claim fees.

Plaintiffs' counsel also has sought reimbursement for staff training on a database that somehow assisted in the preparation of the case. Training on evidence management systems is not fairly charged to a defendant, any more than training on word processing would be.

In short, while the Court finds that the defendants should pay for almost all the time spent by Lorillard's attorneys, a minor reduction is appropriate.

**2) Novelty and difficulty of the questions raised.** The case involved issues of intellectual property, and therefore required counsel skilled in this branch of the law. Most attorneys could not handle the case. Plaintiffs' expert noted that intellectual property attorneys routinely charge more than most trial lawyers. Clearly, a substantial hourly rate is merited.

Plaintiffs' expert also stated, however, a range of hourly rates charged in intellectual property cases. Plaintiffs' counsel's rates fall within the range, but closer to the top than the bottom. The expert said that trademark issues, such as those presented here, are routinely

handled at lower rates than patent cases. These considerations lead the Court to conclude that some reduction of the hourly rate is appropriate.

Finally, the plaintiffs' expert said that large law firms have heavy overhead, causing their attorneys to charge higher rates. The defendants should not pay a premium for the overhead incurred by large law firms.

Taken as a whole, the second Johnson factor calls for a slight reduction of the hourly rates charged.

3) **The skill required to properly perform the legal services rendered.** As noted above, this case clearly required skilled intellectual property attorneys. At the same time, however, this case was a slam dunk for the plaintiffs. Plaintiffs' counsel properly recognized that associates could handle most of the issues presented, and associates performed the lion's share of the work. This factor does not justify an enhancement or a reduction of the fee request.

4) **The attorney's opportunity costs in pressing the instant litigation.** This case presented counsel an opportunity to perform considerable work for a client with the ability to pay. Lost opportunities are not a factor in calculating the proper fee.

5) **The customary fee for like work.** As noted above, Lorillard's counsel's fees fall within the general range for intellectual property cases, but are slightly on the high side for trademark cases.

6) **The attorney's expectations at the outset of the litigation.** Counsel no doubt expected a large tobacco company to pay its fees. Because of their long relationship with Lorillard, counsel modestly lowered their rates to provide Lorillard a discount. The attorneys clearly did not expect to receive their highest rates in this case.

7) **Time limitations imposed by the client or circumstances.** Except at the outset of the case, time limitations did not play a role in the case. The Court recognizes that the seizures at the outset of the case required much coordinated effort by multiple timekeepers, as discussed above.

8) **The amount in controversy and the results obtained.** Although the case did not present an opportunity to obtain substantial damages, the controversy involved Lorillard's good name and good will—the two most valuable assets of any manufacturer. Lorillard's attorneys achieved excellent results in protecting those assets.

9) **The experience, reputation and ability of the attorney.** Lorillard's lead counsel is one of the finest attorneys in Central Virginia, if not the entire Commonwealth. While less experienced, his associate performed first-rate work.

10) **The undesirability of the case within the legal community in which the suit arose.** Although intellectual property is an arcane area of the law, nothing about the nature of the case or client rendered the case undesirable.

11) **The nature and length of the professional relationship between attorney and client.** Lorillard is a long-term client of counsel's firm, and this representation confirmed the value of the firm to Lorillard. This confirmation has an independent value to the attorneys aside from the fees charged.

12) **Attorneys' fees awards in similar cases.** Awards in intellectual property cases fall all over the board. They are uniformly, however, high.[1]

\* \* \*

---

[1] In addition to the Johnson factors, Courts sometimes place independent emphasis on the degree of success achieved, and work spent on claims for which no fee can be recovered. The Court believes that these factors actually form part of the Johnson analysis, and they have been considered above.

Given all the factors to be considered, Lorillard's attorneys' deserve a substantial fee, albeit one that reflects the relatively minor reductions discussed above. Ultimately, the Court has no mathematical formula to determine the correct fee. After reviewing all the circumstances, the Court will award Lorillard eighty percent of the attorneys' fees requested, or $231,976.24.

### III. Costs

The clerk has already taxed costs against the defendants in the amount of $9,794.25. Lorillard seeks to recover $28,908.55 in additional out-of-pocket expenses.

Most of Lorillard's expenditures are routine expenses incurred in any litigation. Several items, however, demand a closer examination. First, Lorillard spent $8,407.47 for "forensic services." The Court has no idea what forensic services were provided; certainly, this case did not include, or merit, expert testimony in any field.

Second, plaintiffs' counsel billed Lorillard for expenses that are part of routine overhead and should not be charged to clients. This includes copying and long distance telephone calls. The telephone and photocopy machine should not be profit centers for law firms.

Third, plaintiffs' counsel has requested to recoup expenses that are simply unnecessary. Several examples will show the kind of unnecessary expenses sought by Lorillard. For instance, plaintiffs' counsel sent a document by Federal Express to Henrico, Virginia, a 9.4 mile (fifteen minute) drive from counsel's office. As another example, counsel has also sought to recover the cost of lunch with an expert witness. As a third example, they seek reimbursement for parking costs at the Courthouse. The Courthouse is about four blocks from counsel's office. These types of expenses should not be imposed on the defendants.

A reduction of $10,000 to the request for costs is appropriate. The Court awards out-of-pocket expenses of $18,908.55.

An appropriate Order will issue.

Date: November 6, 2012
Richmond, VA

/s/ *(signature)*
John A. Gibney, Jr.
United States District Judge